Mr. Cumming, good morning. You may proceed. Thank you, Your Honor. May it please the Court, Counsel, my name is William Cumming and I represent the Appellant and Plaintiff Below Twin City Pipe Trades Service Association. This is an ERISA collection case and I think a place to start is to talk about an old adage that is quite familiar that parents sometimes use, do as I say, not as I do, except that what this case represents is a spin on that. It's don't do as I say and don't follow what I do. That's the defendant's position because we have in this case a situation where a employer had given a letter indicating that it was intending to terminate its participation and coverage under a collective bargaining agreement, but the information in that letter was less than clear. The dates were scattered and wrong. Ultimately, though... Well, now, how wrong are they? I know that we got more things, but just looking at the January 27-11 letter... That letter says that they were terminating their agreement as of January 31st, 2011, and the collective bargaining agreement's termination date is April 30th of 2011. And so that's not very clear. And frankly, Your Honors, this is a case where public policy is at work as well as, we believe, a collision in what has been well-established law in both this circuit and around the country on the effect of an employer's conduct on their status as a participant in multi-employer plans. The public policy really is, is there a requirement that an employer provide a clear and unequivocal notice? And in the absence of a clear and unequivocal notice, does their conduct bind them to a collective bargaining agreement, or is an employer simply allowed to pick any random date to terminate their participation? This circuit has held that an enforceable collective bargaining agreement authorizes a multi-employer plan to be able to collect contributions. A multi-employer plan can rely upon not just a signed collective bargaining agreement, but a collective bargaining agreement that has been made effective by the conduct of the employer. And in this case, it's the conduct of the employer that is inescapable. In this case, the employer, regardless of whether there is a technical problem with their notice in January of 2011, this employer continued to employ union employees after the end of the contract term and commencing May 1 of 2011, continued to make fringe benefit contributions, changed and... Just for the next six months or... Eight months, Your Honor. Eight months. Thank you. You're better at math than I am. Go ahead. But I think that's a great, I think that's a great point to focus on, because does it matter if it's a month or eight months or 18 months or 27 months? Where do you draw the line? Longer is better, though. It certainly becomes clearer and clearer the longer that you go, but I think, Your Honor, from a matter of policy as well as the application of the law, we believe that this is a tremendous opportunity for the court to provide... You're here asking for summary judgment or are you just saying they're disputed facts? What's your position? Our position is that it was appropriate for summary judgment and that the award of summary judgment was in error in favor of the defendant. The defendant has raised... So you're all or nothing at this stage? Well, Your Honor, we... I would call all or nothing. Trying to be a good lawyer, Your Honor, we did note that there were arguments raised by the defendant that said that, for example, not only did they continue their fringe benefit contributions, but they attended multiple bargaining sessions for the new contract term. And in their argument, they suggested that that was because in their heart, in their minds, they were intending something different. If that's going to be given effect, we don't think it's relevant. That's why we think summary judgment is appropriate. However, if the court were to determine, as the trial court did, that those are significant factors, then that does create a fat question because it's hard to discern from just an affidavit what was truly the intent and what was meant. So you don't have an all or nothing position? I don't, Your Honor. I think our position is that while the facts support that summary judgment is appropriate, if those particular facts are given sufficient weight and credence as matters of consideration by the court, that it would require that there be further proceedings to fact find. Because I'm looking at the end of your brief. At the end of your brief, you're all or nothing. I think our initial brief, that's true, and then they emphasize that in their responsive brief. In our reply, we do clarify, Your Honor, at the tail end of our brief, that if those factors really are deemed by the court to be matters that may be dispositive, then that would change the landscape. Your Honor, I think that the opportunity that the court has to provide some clarity for not just this case but for operations generally would be extremely helpful is a notice sufficient if it simply says, I quit, regardless of anything else. Does it need to say just I quit, or does a notice need to say? Well, we don't give advisory opinions. Except that in this case, Your Honor, that is true, and we certainly were hearing quite a bit about that this morning in the first argument. But I think this is different in that this is an event that has occurred, and the question is, is the content of the notice legally sufficient? And if the court's determination is that that was a legally sufficient notice, then that will guide us. That will be one determination. I was struck by Judge Magnuson's opinion about the employer doing the good and decent thing. The adage I was thinking of when I was talking about this case with one of my law clerks is the old thing about no good deed goes unpunished. Well, Your Honor, that's a great observation. I think I have the utmost respect for Judge Magnuson, but I think that this one got lost along the way because I think that if one were to make the determination, and that certainly is possible, that the notice itself was appropriate, the conduct really isn't. And this idea that no good deed goes unpunished would suggest that I could still pick for matters of the operation of benefit plans in the system under ERISA that I, as an employer, can give a notice and then pick a later date to be determined at my whim if I simply say, I thought I'd be doing the right thing if I kept them in for an extra 18 months or 8 months. I think that's not the sort of clarity this Court has indicated previously. Counsel, wouldn't it go year by year? Because it says, otherwise, if no notice is given, the agreement is in effect from year to year. If there's no notice, that would be one possible outcome. Why do you sometimes act like it's a two-year period? If they miss this, you act like it's a two-year period. I didn't understand that from your brief. I thought it would be a year at a time because I read this. Let me respond to that. I think that's an easy provision to clarify. The collective bargaining agreement that was effective on May 1 of 2011 was for a two-year term. And when an employer, as this Court has held on numerous occasions as well as a variety of other circuits, that when an employer conforms their behavior to the terms of the collective bargaining agreement, they're bound for that term of the collective bargaining agreement. What am I reading here that I thought was the collective bargaining agreement? It says in employment agreement, addendum page 10. I think it's from your brief. Go ahead. It is, but I think the distinction is that the parties, that the multi-employer group and the employers negotiated an additional contract term that was for two years. So it overrides what I'm looking at? It does because otherwise if this agreement simply continues for another year, that wouldn't embrace the fact that they made adjustments in the pension contribution rate that was effective, and they made that in December of 2011, which is a part of the detail that reflects that by their performance, they were specifically conforming their behavior to be in conformity with the collective bargaining agreement. And that has been the longstanding rule, that when an employer takes those actions to conform,  and from a multi-employer plan perspective, the ability to be able to continue to enforce those contributions, this court has recognized that there's a need for the plans to be able to contemplate that the employer would be participating for the entire contract term when they've conformed their behavior and adopted the agreement. And it's our position that the objective facts, the only facts that really should count, objective facts support that that's in fact what the employer did in this case. He showed up for negotiations. He continued to make his contributions, employ. I understand that argument, but in your brief you call it the collective bargaining agreement. I've now got it here. You attach it to your brief, and it says year to year. And I know what a year to year thing is. I think they're only stuck until 30th of April of 20, the next year. 2012. 2012, thank you. Had no one done anything, I believe that that's correct, Your Honor, but the multi-employer group in fact sent their notice for a re-opener of the contract, and they negotiated a new two-year agreement. And it's the provisions of that new two-year agreement that the defendant followed, so that their obligation is for the duration of that two-year contract term, April 30th of 2013. Whatever says two years, is that in the record somewhere? That's an easy way to solve it. I believe that it is, but I may need to track that down for you. That's okay. And I can address that on my rebuttal. That's all right. And I see I'm actually to my rebuttal time. I reserve five minutes for rebuttal. I'm a little beyond that. If the Court's indulgence, I'll take my leave. Very well. Thank you. Let's see. Mr. How do you pronounce it? Flugel? Rhymes with legal. Pardon? It rhymes with legal. Yeah, that's what I thought. It's a German pronunciation, in other words. Well, whatever. It's a North Dakota German pronunciation. Okay. May it please the Court, my name is Will Flugel, and along with Phil Hansen, we represent the appellee in this matter, Frank O'Loughlin, Plumbing and Heating. We feel that the decision rendered by Judge Magnuson was a fair and reasonable one and should be affirmed. In this case, I think if . . . this is a small shop, a fourth generation plumbing family . . . It has no legal relevance, does it, counsel? Well, in terms of their sophistication and what may account for some of the actions, I think it underlies that. It sounds like we need an evidentiary hearing. Well, according to the decision of Judge Magnuson, an evidentiary hearing, at least in a cursory fashion, was conducted by him, and that would be consistent with the Sixth Circuit. You can look at not just the four corners of the document, but sort of a totality of the circumstances type of an analysis, and he did that and sort of went line by line through each of the justifications for a different outcome and said, you know, how much plainer can it be than a letter that says, quote, we will be terminating the existing work agreement? Yeah, but it doesn't have the right date on it. This is like you've got a rent, you know, and you've got a 30 days notice on rent everywhere, and this gives four days. Oh, no. No, this gave more than 90 days. It gave 93 days. It doesn't say that. The letters dated January the 27th of 2011, and because the contract would have expired on April 30th, 2011, sending it out on the 27th was 93 days before the contract was set to terminate, and that's why I began referencing sort of the sophistication or perhaps lack thereof here. This was an earnest effort by this employer to terminate the agreement. How about December 27, 2011? That confuses me even more. Well, I'm thinking that in this case Mr. O'Loughlin probably did four things he didn't need to do. The first thing was in the initial letter, he actually gives an effective date that's probably meaningless, but I think you can understand now why he did that in light of when the contract was set to close. The second thing that he does is he continues to pay for roughly a year, and that is in the record. It's discussed before Judge Magnuson. It's how he was raised, and this is how you decently treat people. It's the you stole my fire. I was going to use the no good deed. The third thing that he . . . But he used union workers, right? Yes. There were still six union workers out of the 34 employees. Well, that's more than just a good deed. You're using union workers. You go non-union. He had already terminated the contract, though, because remember it says we will be terminating the existing work agreement. The third thing he did was to send the second letter that, Judge Benton, you're now referencing, and that pretty clearly has a typographical date in, the kind of mistake I make every January. Okay, what date do you think that January 1, 2011 means? It should be 2012, then, shouldn't it? Well, I thought it meant back to January 31. No, sir. 2011. I believe that Judge Magnuson thought that what it meant was the typographical error should be moved to the next date. In other words, he's telling them, I'm really, really . . . That's four days' notice. Well, at that point, the contract had already been terminated. I'm suggesting to you that the second letter is superfluous, but certainly could be used to assess that issue of what his mindset was. And the fourth thing that he did that wasn't necessary was to continue to participate in some negotiations. But I think Judge Magnuson disposed of that rather well, where he said, well, doesn't that merely reflect that the contract was at an end, and this is an issue about whether or not it should be reinitiated? Yes, and he took every fact and construed it in your favor. We were the ones against whom summary judgment had been raised, and he did what he was supposed to do in that respect. You think that's the way we're supposed to view it on this appeal? Absolutely. The standard of review here should be a review of whether or not there was an error of law committed. And what we haven't yet talked about is this whole idea of whether there's a termination defense. That's mainly what we wrestled with in the briefs, and we really haven't, neither of us, spoken very much about that. I can address that if you'd like. I think it's well-grounded. The Minnesota District Court has now, in three decisions, chosen to apply this Sixth Circuit test, which allows that sort of cursory review. But coming back, Judge Benton, to your question on the standard of review here, if there are resolutions of fact or a cursory analysis, then that would be reviewed under a clearly erroneous test. With respect to the issue of why a termination defense should be allowed, the Eighth Circuit and central states recognized two of what have become three exceptions. Previously accepted that pension contributions are illegal, that the collective bargaining agreement was void ad initio because of fraud, and the third is that the employers had voted to decertify the union. But the Sixth Circuit recognizes that the courts should be permitted to look at whether there was or is or remains a collective bargaining agreement in effect. Central states, the Seventh Circuit decision, the Schilly case, says an employer should not be bound by a contract that is unlawful. The laborers pension trust versus interior exterior case from the Sixth Circuit in 2010 says that the assertion of a termination defense, provided the inquiry is superficial, sensibly balances the competing interests in a funds avoiding complex litigation and ensuring that the employer has a legitimate contractual obligation to make contributions. If a termination defense were not allowed, then the local could essentially just say, well, we're not going to afford any deference to that termination letter. There's a contract. You once signed a contract. You owe us the benefits. There should be some reasoned inquiry into whether or not a termination has occurred. And I think that in light of the case law on what would represent a clear and unequivocal termination, the examples I can point you to in the plumbers and fitters case from the Sixth Circuit, there was a letter that said we hereby withdraw affiliation and will no longer be bound by any collective bargaining agreement. In the trustees of BAC versus Northwest Tile in 2005, the Sixth Circuit was dealing with a letter that said, please treat this letter as notice by Northwest Tile company of withdrawal by it from any employer association for purposes of collective bargaining with your union. Counsel, the Sixth Circuit has several of these cases in any of them. Did the employer continue making the contributions for months in the Sixth Circuit or any other circuit? I don't mean to the Seventh Circuit has a continuing payment case called brick layers versus banner from 2004. How long did they pay? Uh, they never quit. Uh, here's the problem with that case and why it has to be a period of years. Was it years or your honor? I can't long time. Go ahead. I really don't want to guess and mislead you, but they paid monthly fringe benefits. But in that case, the employer had never signed the collective bargaining agreement. And there wasn't a collective bargaining agreement in effect. And so the legal issue that they were grappling with there was whether or not the employer would be a stopped to deny the effective date. And let's now look at a whole, uh, wider range of conduct. And that includes the fact that he was paying these fringe benefits. So that's where that becomes relevant is to a stop him by his conduct, where there's not a collective bargaining agreement. We don't have a case, at least that I was able to find anywhere that deals with the, these continuing payment, uh, issues that are genuinely on their facts, disposing of a case where there's been a termination letter followed by payment. We have, uh, cases where there's some other controversy and, and payment happens to be occurring. Uh, we don't have, have our circumstance occurring before. Let me double back because I now understand what you said to me earlier. You didn't formally move for summary judgment, only twin pipe formally moved, but you did request summary judgment. We requested dismissal. Yes. No, well, it's your brief says you requested summary judgment. That may be an inartful choice of words on my part. If we want to be very technical procedurally, uh, this, this matter should be dismissed. It's probably, you ever asked for summary judgment. I know the courts, I understand the court's power to give it. That's not where my question's going. Do you think you asked for summary judgment, the district court, or you should treat it as though we did your honor. Thank you. And in fairness, you should, I don't want to, you know, and so in that regard, shouldn't we interpret some, some facts favorable to them on your request? So both sides get the favorable, the inferences that would support their, sir, the, we seem to do that on appeal. Well, I hadn't thought about it till you told me that earlier. Yeah. I think though that even if you do sort of the threshold gate, we have to go through is, was there a termination and there was, there's a letter now there, are there alleged infirmities or ambiguities in that letter? And judge Magnuson conducting the cursory evaluation, uh, for which I submit he's entitled to a clearly erroneous standard of view says, uh, you know, as to each of these arguments, they're not supported. And that's why I wanted to say, I think that if, if Mr. Laughlin did anything here, it was probably too much. Uh, but there was an earnest effort that he made that again, talking to my law clerk about, you know, we talked about a lot to law clerks about why did the lawyer do this? Why didn't he do that here? If there wasn't the mistake, he didn't confer with his lawyer. Maybe he doesn't have a retain, a lawyer on retainer. That's that's in the record. Yes. In the transcript, your honor is irrelevant, but it's interesting. Interesting thing. And refresh my memory a second. Did, didn't Mr. Laughlin actually appear in front of the judge under oath? I don't believe it's affidavits. Isn't it? The transcript of the entire hearing begins, uh, at page a joint appendix, uh, two 96. His appearance is not noted. There's no testimony there. There's no live testimony in this case. No, your honor. And it wouldn't be typical on summary judgment. I just want to be sure I understood you. Affidavits were submitted by the respective parties as, as would be more traditionally the case. So we've got that termination. And now the issue is whether this circuit should craft a legal test to undo a termination, uh, based on, uh, what's alleged to be confusion. You put in a date that wasn't necessary in the first letter. Uh, you, you continued paying, you sent a second letter, you were seen at at union meetings. All of these things are indications that the, we shouldn't believe what was in the original letter that said we, we hereby terminate our contract. And I don't think that that's a test that any, any circuit has adopted. And we've already talked about the legitimacy and the reason for, uh, allowing a termination defense with at least, uh, some superficial or cursory review, because it would be fundamentally unfair to make an employer pay benefits under an agreement that was no longer in effect. So again, you say we should craft a legal test or I think that's what you're being essentially asked to do here. As I said, we don't get, I suppose we wouldn't away. If we, if we say that this was inadequate, we've said that this won't do if we say it's adequate, then we, I guess have crafted something. That would be a case specific ruling certainly. But the issue is this, the circuit could speak with authority to the question of whether within this circuit, uh, a termination defense is allowed. The thing I always tell my law clerks, when I ask them to draft some things, say only as much as necessary, not one more word because it will come back to haunt us. You clerks will long be gone in your long practices and somebody will say, judge Roman, remember what you said in this case, you lawyers have a song with a long memory. Thanks to Westlaw. And, and we're continually, uh, citing your own cases to you and you're telling us, is that my case because there are obviously so many, but I think that the point is, is simply that, uh, here, uh, based on the existing law, at least in the other circuits that recognize a termination defense, something that can raise issues, uh, before the court. And in light of what was submitted here and in light of the findings of judge Magnuson, this is a matter that, that should be. So nobody said it bluntly. Don't you think the central state's case in the little word void recognizes a termination defense void? And you know what it says in the debt, the collective bargaining agreement is void. I thought this was an easy question is the reason I said that would seem to be a pretty straightforward assessment. When I went through and looked at each of the letters in these various cases, and they're only about eight. So it's relatively easy to do. The language that was used here, perhaps in artfully is, is pretty darn close for a lay person to, to, to say, essentially I quit. Um, and the fact that he continued to do, uh, other things, uh, that benefited the, the people. I don't think, I would agree with judge Magnuson. He should not be punished for that. Thank you very much for the opportunity to appear and argue before. I was struck. I really appreciated your footnote eight, where you talk about the development of the common law. We don't see that much in our briefs anymore. It reminds us once in a while, maybe we should pay more heed to the development of the common law. I put that in there for your law clerk to take your honor, because I figured, frankly, that is, that is what is I'll have to ask her. She read that. Well, I'm sure she did. Thank you. I'm sorry. I don't mean to be flippant about it, but no, that's a very interesting footnote. Common law begins in the trial court. I hadn't thought of that before, but I guess it's so obvious. That's why I hadn't thought of it. Well, Mr. Um, coming. Thank you, your honors. I'm going to try to make three points. One is a follow-up, uh, dependent to, uh, the arguments, both of council and from, uh, our first session, the two-year contract that is in the record. It's in the addendum at page 10 and it does provide to 2013, uh, with respect to the standard of review. I know the court knows the standard of review and it is a de novo review. And, and that's been the case, uh, uh, as articulated in the Gander mountain case. The last thing I wanted to touch on is this, this termination defense. And the court, and I think the district courts in Minnesota have begun to utilize the termination defense and, and that's fine from the appellant's position because the termination defense really doesn't do anything different than that body of law.  It's really from our view, it's a distinction without a difference. If the court were to say the a circuit adopts the, uh, termination defense, that's great. But I think the one word void in central states is enough. I don't your honor, because that's, because that's actually not what void refers to. When you look to those cases, what void talks about is void at the inception void at the inception, typically through a fraud and the inducement. And that's not the same as the contract expired for a contract expiration. The issue becomes what's either, has there been a notice? And was that notice effective? I confess my small mind. I get wrapped up around some guidance on what is adequate notice. But if there's any question,  it's just unequivocal that the employer did the things that a signatory employer continues to do. They made those contribution payments. They employed union employees. They attended a contract negotiations. They just did all the things that would signal to the world that they in fact intend to be bound. And then seven months after that contract became effective, they made a benefit adjustment and they reported properly that a benefit adjustment called for by the contract, that objective standard. And I think the significant thing for the court to consider in the termination defense as a additional basis upon which to determine if there's ability to collect contributions is that that cursory review looks at not only my mind, but objective factors. And ultimately I think as the court senses that when I have a business and I employ several dozen people, I, it's, it's wonderful to have a down home feel to it and we do our business and shuffle our feet a little bit. But the reality is it's a business. These issues related to healthcare and retirement benefits, and it does require a slightly higher standard than I think I kind of tried. And I think that the objective standard that both the existing case law provides for what it takes to conform to the collective bargaining agreement and what would be that objective review under the termination defense. In this case, each compel that the obligation continued for the duration of the contract. Thank you very much. I have a question. You thought I was thinking about making a gratuitous comment, but I have a little sign that says no gratuitous comments. So no, no, I'll know. I was found your remarks here about the development of, by the district courts in Minnesota of this sort of the sixth circuit view. I thought you would take a harder stand against it really, but you're not, it's refreshing, I guess, in a way. And really that's because of the practical nature of it. It really does nothing more than what the existing case law had been requiring. It's hard to quibble with that. Then someone would challenge us. So you think the law is wrong? No, I think the standard is correct. Okay. Thank you. The case is submitted. We will take it under consideration.